Hal and Ethel Hertz v. Commissioner.
Hertz v. Commissioner
Docket No. 34273.
United States Tax Court
1953 Tax Ct. Memo LEXIS 310; 12 T.C.M. (CCH) 370; T.C.M. (RIA) 53109; April 6, 1953
Royal Flagg Jonas, Esq., for the petitioners. Ralph R. Bradbury, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency of $1,007.04 in income tax against the petitioners for 1948 and added $151.07 as additional tax under section 294 of the Internal Revenue Code. A number of the errors complained of in the petition have been adjusted by agreement of the parties and the adjustments so agreed upon can be reflected in a Rule 50 computation. Two issues remain for decision: (1) Did the respondent correctly determine the amount of the closing inventory of a partnership, of which the petitioners were members, for the fiscal year ended May 31, 1948; and (2) Was the respondent correct *311 in decreasing claimed travel and entertainment expenses of the partnership from $2,447.24 to $61.81. Findings of Fact The petitioners Hal and Ethel Hertz are husband and wife residing in Miami Beach, Florida. They filed a joint income tax return for 1948 with the collector for the district of Florida. On June 1, 1945, the petitioners, together with Ben Ross, Ruth Ross, and Harry Eisenberg, formed a partnership under the name of Hertz-Ross to operate a number of stores for the retail sale of shoes. Eisenberg contributed $18,000 to the partnership capital and the other partners $6,500 each. Stores were opened in Miami Beach and Palm Beach, Florida. Hertz-Ross kept its books and filed its income tax returns on the basis of a fiscal year beginning June 1 and ending May 31. During its fiscal year 1947-48 a new store was opened by Hertz-Ross in New York City. In connection with supervising the opening of the New York store, negotiating the lease thereof, and procuring the inventories, it was necessary for the partners to travel several times to New York from their principal place of business in Miami and to incur expenses for travel and entertainment. On its partnership return for *312 the fiscal year beginning June 1, 1947, and ending May 31, 1948, Hertz-Ross claimed a deduction for travel and entertainment of $2,447.24. A copy of report covering Hertz-Ross for the fiscal years ending May 31, 1946, May 31, 1947, and May 31, 1948, furnished to Hal Hertz by the Internal Revenue Agent in charge showed a disallowance of $2,385.43 of the claimed amount and an allowance of $61.81. Of the amount claimed, $2,000 was an ordinary and necessary business expense. On its return for the fiscal year 1946, Hertz-Ross valued the original opening inventory at cost. The closing inventory of May 31, 1946, was also valued at cost. Like treatment was accorded the inventories for the fiscal year 1947 in the partnership return for that year. The opening inventory for the fiscal year 1948 was also valued at cost in the return for that year. Toward the end of the fiscal year 1948 negotiations were under way among the partners looking to a dissolution of the partnership. For the purpose of arriving at an inventory value on which a determination of the value of each partner's capital share could be based after also taking other items into consideration, a list of shoes in stock was prepared. *313 This list contained a notation of the number of pairs of shoes of a particular style, the price at which such shoes were offered at retail, and the estimated price at which such shoes could have been replaced by going into the market for them. The list did not contain the original cost of the shoes or show when they were purchased. The list was dated May 31, 1948, and consisted of 4,152 pairs of ladies shoes, 2,933 from the Florida stores and 1,219 from the New York store carried at a total replacement cost of $31,680.55. The custom of Hertz-Ross was to purchase shoes for resale only once a year - in April for the Florida stores and in January for the New York store. Some of the shoes in the list described above had been purchased between January and April 1947. Others were hold-overs from April 1946. Some had deteriorated due to heat. Others were made of ersatz material due to war time restrictions. They were highly styled ladies shoes. All of the shoes shown on the list were not outstyled or obsolete or subnormal. Hertz-Ross was dissolved on May 31, 1948. The estimated value of the shoes shown on the May 31, 1948, list was used as one factor in determining the value of the retiring *314 partners, shares. Hal and Ethel Hertz and Harry Eisenberg bought out the shares of the Rosses and formed a new partnership to continue the business. Within a week after dissolution the stock of shoes in the Miami store was offered by the new partnership to a New York dealer in shoe stocks, called a "vulture" in the trade, for an average of $7.50 to $8 a pair. The "vulture's" best offer was $4.50 and no sale was consummated. It was common practice at Miami Beach to reduce prices in order to dispose of shoes left over from one season before the beginning of the new season. The new partnership held such a sale in the summer of 1948 of the shoes it had taken over from Hertz-Ross on May 31, 1948. The last of such shoes were disposed of in a lot of 486 pairs in October 1948 at $4.50 per pair. The shoes handled by the partnerships usually retailed at from $25 to about $60. At sales they were advertised at $9.85. In its final partnership return, that was filed for the fiscal year ended May 31, 1948, the original partnership used the $31,680.55 figure shown on the list prepared as described above as the value of its closing inventory. The respondent disallowed this figure and allowed *315 instead a figure of $58,747, which equalled the beginning inventory for the year. It is impossible from the record to verify the partnership inventory. During the fiscal year 1948 Hertz-Ross changed its method of inventory valuation from cost without requesting or receiving permission from the respondent to change to any other method. Opinion We turn first to the inventory question. Admittedly, Hertz-Ross changed its method of inventory valuation during the fiscal year ended May 31, 1948, and thus ran contrary to Regulations 111, section 29.22 (c)-2 which provides for such a change only after permission is secured from the Commissioner. Nevertheless, the petitioners argue that Hertz-Ross was justified in its action by the exception in the Regulations which states that "Any goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, * * * should be valued at bona fide selling prices less direct cost of disposition, whether basis (a) or (b) is used." Basis (a) is "cost", (the method used by Hertz-Ross in previous years), and basis (b) is *316 "cost or market, whichever is lower." The Regulations further provide that "Bona fide selling price means actual offering of goods during a period ending not later than 30 days after inventory date", and the burden is placed on the taxpayer to show that such exceptional goods are within the classifications mentioned and to maintain such records of the disposition of the goods as will enable a verification of the inventory. The crux of the respondent's argument is that Hertz-Ross has not sustained its burden of bringing itself within the exception made in the Regulations in that there was not the required "offering of goods", that no verification of inventory was possible, and that the entire closing inventory was valued by approximation. We agree with the position taken by the respondent. The burden of bringing the partnership within the exception rested squarely on the taxpayers. The list of shoes prepared by the partners which is in the record and which purports to be an "inventory" is seriously deficient. It contains no information on the dates the shoes were acquired or the cost at which they were acquired. No figures against which those appearing in the list can be checked *317 are in the record. This makes it impossible to obtain a verification of the inventory as required by the Regulations. Further, the evidence as to how many pairs of shoes were ersatz, how many were damaged by climate, and how many were outstyled is of the most general character. At best, the evidence amounts to an approximation and such evidence is not sufficient to satisfy the taxpayers' burden. 2 Mertens, Law of Federal Income Taxation, sec. 16.24; Cf. Cleveland Automobile Co. v. United States, 70 Fed. (2d) 365, certiorari denied 293 U.S. 563. We hold that the petitioners have not met their burden and, in the circumstances, we approve the respondent's action with respect to inventory valuation. He rejected the partnership figure for the closing inventory and used instead a figure equal to the opening inventory. We cannot say this action was capricious or arbitrary. The petitioners make an alternative argument, that even though we approve the respondent's inventory action, they are entitled to take a loss in 1948 based on a "sale" of the shoes by the old partnership to the new. Assuming, without deciding, this contention to be tenable, there is nothing *318 in the record to establish the amount of any such loss. The only evidence is the general assertion by a member of the partnership that the value of the shoes agreed on by the partners for use in determining the value of partnership shares on dissolution was less than the cost of the shoes. The cost of the shoes is not shown. This falls far short of proving the amount of any loss. The traveling and entertainment expense issue is disposed of by our findings of fact. The question was one of substantiating certain claimed expenditures and was centered around specified items. The evidence consisted of cancelled checks and the testimony of Hal Hertz to the effect that the amounts involved were used for expenses in connection with the business. Some of the checks were in round numbers. The breakdown of the actual expenditures attempted by the testimony left something to be desired; nevertheless, we are satisfied after applying the principle of Cohan v. Commissioner, 39 Fed. (2d) 540, that $2,000 of the amount claimed should have been allowed as ordinary and necessary business expenses. One additional point needs to be mentioned. The respondent added $151.07 as additional *319 tax under section 294 of the Code. No issue on this point was raised in the pleadings and no testimony or other evidence was offered on it. In their reply brief the issue is raised by the petitioners for the first time. In these circumstances the issue is not before us and we make no determination with respect to the addition to tax. Decision will be entered under Rule 50.